UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

C. A. NO.: 08-cv-00041-T-DLM

JOYCE WAGENMAKER,
Plaintiff,

v.

AMICA MUTUAL INSURANCE COMPANY,
Defendant/Third-Party Plaintiff,

v.

VITO VITONE,
Third-Party Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT/THIRD-PARTY PLAINTIFF, AMICA MUTUAL INSURANCE COMPANY'S MOTION TO DISMISS, THIRD-PARTY DEFENDANT VITO VITONE'S COUNTERCLAIMS**

## BACKGROUND

The parties in this action have asserted claims for declaratory relief for the purpose of determining their respective rights and obligations under insurance policies issued by AMICA Mutual Insurance Company ("AMICA") to Vito Vitone ("Vitone"). This matter arises out of a motor vehicle accident which occurred in Cranston, Rhode Island on July 3, 2006. Vitone, who was operating his 1998 Chevrolet Corvette, and his passenger, Joyce Wagenmaker ("Wagenmaker"), allege that they sustained personal injuries as a result of a collision with an unidentified vehicle. Wagenmaker commenced this action and asked the Court to determine and declare that she is entitled to Uninsured Motorist coverage under AMICA's policy. AMICA responded with a counterclaim against Wagenmaker and a Third-Party Complaint against Vitone. AMICA seeks a declaration that there is no coverage for the Uninsured Motorist claims because Vitone deleted all coverages (except "Other Than

Collision" coverage) for his 1998 Chevrolet Corvette several months before the accident. Vitone responded with counterclaims against Amica for breach of contract, negligence, and bad faith insurance practice under Rhode Island statutory law (R.I.G.L. § 9-1-33). Vitone's counterclaims did not arise from the July 3, 2006, but rather a separate and distinct accident allegedly occurring on or about November 21, 2005.

## PROCEDURAL HISTORY

On January 30, 2008, Wagenmaker, a citizen of Illinois, commenced this action against AMICA, a Rhode Island corporation. *Ex. 1, Complaint.* Plaintiff claimed her damages from these claims exceeded $75,000.00. She also alleged that that subject matter jurisdiction existed pursuant to 28 U.S.C. §1332(a)(1) because the amount in controversy exceeded $75,000.00 and parties were of diverse citizenship – Wagenmaker was a citizen of Illinois and AMICA was a citizen of Rhode Island. *Ex. 1.*

On February 6, 2008, AMICA filed an Answer and asserted counterclaims for declaratory judgment pursuant to 28 U.S.C. §2201(a) against Wagenmaker. *Ex. 2, Answer with Counterclaim.* Pursuant to Fed. R. Civ. P. 14, AMICA also filed a third-party complaint for declaratory judgment pursuant to 28 U.S.C. §2201(a) against Vitone. *Ex. 3, AMICA's Third-Party Complaint for Declaratory Judgment.*

Although Vitone filed a Motion to Dismiss AMICA's third-party complaint, the Motion was withdrawn at a recent hearing.

On April 25, 2008, Vitone filed an Answer to Amica's third-party complaint for declaratory judgment pursuant to 28 U.S.C. §2201(a) against him and asserted counterclaims against Amica for breach of contract, negligence, and bad faith insurance

practice under Rhode Island statutory law (R.I.G.L. § 9-1-33). *Ex. 4, Vitone's Answer with Counterclaims.*

By the instant Motion, AMICA hereby moves this Honorable Court, pursuant to Federal Rules of Civil Procedure 12(b)(1), to dismiss third-party defendant, Vito Vitone's counterclaims against it for breach of contract, negligence, and bad faith insurance practice (R.I.G.L. § 9-1-33), because the counterclaims are permissive and lack an independent basis of subject matter jurisdiction.

## STANDARD OF REVIEW

"In ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) . . . a court must construe the complaint liberally, treat all well-pleaded facts as true, and indulge all reasonable inferences in favor of the plaintiff." Narragansett Elec. Co. v. Constellation Energy Commodities Group, Inc., 526 F.Supp.2d 260, 267 (D.R.I. 2007). See also Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir.1996); Murphy v. United States, 45 F.3d 520, 522 (1st Cir.1995). "[T]he party invoking the jurisdiction of a federal court carriers the burden its existence." Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993). When considering a motion to dismiss for lack of subject matter jurisdiction, "the court may consider whatever evidence has been submitted . . .." Aversa v. U.S., 99 F.3d 1200, 1210 (1st Cir. 1996).

## ARGUMENT

### A. THE COURT MUST DISMISS VITONE'S COUNTERCLAIMS BECAUSE THE COUNTERCLAIMS ARE PERMISSIVE AND LACK AN INDEPENDENT BASIS OF SUBJECT MATTER JURISDICTION

#### 1. VITONE'S COUNTERCLAIMS ARE PERMISSIVE

"The federal rules of civil procedure distinguish between mandatory and permissive counterclaims." Reitz v. Dieter, 840 F.Supp. 353, 355 (E.D.Pa.1993). Specifically, Federal Rules of Civil Procedure 13 states as follows:

> (a) Compulsory Counterclaim.
>
> (1) *In General.* A pleading must state as a counterclaim any claim that--at the time of its service--the pleader has against an opposing party if the claim:
>
> (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
>
> (B) does not require adding another party over whom the court cannot acquire jurisdiction.
>
> . . .
>
> (b) Permissive Counterclaim.
>
> A pleading may state as a counterclaim against an opposing party any claim that is not compulsory.

Fed. R. Civ. P. 13. "Federal courts have ancillary jurisdiction over compulsory counterclaims." Iglesias v. Mutual Life Ins. Co. of New York, 156 F.3d 237, 241 (1st Cir. 1998). See also McCaffrey v. Rex Motor Transp., Inc., 672 F.2d 246, 248 (1st Cir. 1982). "Permissive counterclaims, however, do not fall within ancillary jurisdiction and therefore may not be heard in federal court unless supported by an independent basis of jurisdiction." Id. A permissive counterclaim must be dismissed in the absence of an independent basis of

subject matter jurisdiction. Klein v. London Star Ltd., 26 F.Supp.2d 689, 697 (S.D.N.Y.1998).

In McCaffrey v. Rex Motor Transp., Inc., 672 F.2d 246, 249 (1st Cir.1982), the First Circuit adopted the *logical relation test* to determine whether a counterclaim qualifies as a compulsory or permissive counterclaim. "A claim qualifies as compulsory only if: it arises out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant." Iglesias v. Mutual Life Ins. Co. of New York, 156 F.3d 237, 242 (1st Cir. 1998) citing McCaffrey v. Rex Motor Transp., Inc., 672 F.2d 246, 249 (1st Cir.1982). To determine whether "the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant[]", the Iglesias v. Mutual Life Ins. Co. of New York, 156 F.3d 237, 242 (1st Cir. 1998) Court assessed whether the counterclaimant's ability to recover on his claims depended on the success or failure of the claims asserted in the underlying action. Iglesias v. Mutual Life Ins. Co. of New York, 156 F.3d 237, 242 (1st Cir. 1998). The court also accessed whether the counterclaims claims were tied to the merits of the claims asserted in the underlying action. Id.

Applying the *logical relation test* in the instant case, Vitone's counterclaims bear no logical relation to the underlying action and therefore, are permissive. First, the aggregate of operative facts giving rise to underlying action are clearly distinct from the facts supporting Vitone's counterclaims. In fact, Vitone asserts in the factual allegations to his third-party counterclaims that the counterclaims arise from a "November 21, 2005 accident

[that] is entirely disassociated with the July 3, 2006 accident . . .." *Ex. 4 (paragraph 11).* Vitone's counterclaims arise from an alleged November 21, 2005 accident that is totally distinct from the July 3, 2006 accident at issue in the underlying action. Vitone's counterclaims derive from a different set of operative facts and they involve different parties, documents, witnesses and evidence. The issues relating to Vitone's counterclaims are distinct from the underlying action. Secondly, Vitone's ability to recover on claims arising from the November 21, 2005 accident does not depend on the success or failure of Wagenmaker's claim for declaratory relief in the underlying action. Vitone's counterclaims are not tied to the merits of Wagenmaker's claim for declaratory relief in the underlying action. Thus, the counterclaim are permissive (and not compulsory).

### 2. VITONE'S COUNTERCLAIMS LACK AN INDEPENDENT BASIS OF SUBJECT MATTER JURISDICTION

Vitone cannot establish an independent basis of subject matter jurisdiction for his permissive counterclaims against AMICA for breach contract, negligence, and bad faith insurance practice under Rhode Island statutory law (R.I.G.L. § 9-1-33). Vitone cannot prove the existence of an independent basis of subject matter jurisdiction for his counterclaims due to a lack of Constitutional and statutory support.

"The district courts of the United States . . . are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[]' . . .. Exon Mobil Corp. v. Allapattah Service, Inc., 545 U.S. 546, 552 (2005) citing Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). "In order to provide a federal forum for plaintiffs who seek to vindicate federal rights, Congress has conferred on the district courts original jurisdiction in federal-question cases-civil actions that arise under the Constitution, laws, or

treaties of the United States." Id.; see also 28 U.S.C. § 1331. "In order to provide a neutral forum for what have come to be known as diversity cases, Congress also has granted district courts original jurisdiction in civil actions between citizens of different States . . .. Id; see also 28 U.S.C. § 1332. "To ensure that diversity jurisdiction does not flood the federal courts with minor disputes, [28 U.S.C.] § 1332(a) requires that the matter in controversy in a diversity case exceed a specified amount, currently $75,000." Id.

"[I]n certain classes of cases . . . once a [district] court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." Id. Until 1990, "even when the district court had original jurisdiction over one or more claims between particular parties, the jurisdictional statutes did not authorize supplemental jurisdiction over additional claims involving other parties." Id. In 1990, Congress "passed the Judicial Improvement Act . . . which enacted" 28 U.S.C. §1367. Id. 28 U.S.C. §1367(a) provides as follows:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties. 28 U.S.C. § 1367

In Exxon Mobil Corp. v. Allapath Service, Inc., 545 U.S. 546, 558 (2005), the Court noted that the 28 U.S.C. § 1367 contains "a broad grant of supplemental jurisdiction over other claims within the *same case or controversy*, as long as the action is one in which the districts courts would have original jurisdiction . . .." (emphasis added.) It is generally accepted that the "same case or controversy" standard is satisfied if the "claims . . . share

'a common nucleus of operative fact' such that it would ordinarily be expected that the plaintiff try the claims in the same proceeding . . ..'' O'Bannon v. Friedman's, Inc., 437 F.Supp.2d 490, 492 (D.Md, 2006); see also United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966). "In expounding upon the concept of a 'common nucleus of operative fact,' the Forth Circuit has found that supplemental jurisdiction . . . may be found where the claims 'revolve around the same fact pattern[.]'" Id. at 493 (citing White v. County of Newberry, 985 F.2d 168, 172 (4th Cir. 1993); see Development Finance Corp. v. Alpha Housing & Health Care, Inc., 54 F.3d 156 (D. Pa. 1995) (claims of intervenor were "so related to claim in the original action . . . that they form part of same case or controversy."); cf Interconsult, AG v. Safeguard International Partners, LLC, 356 F. Supp. 2d 505, 506 (D. Pa. 2005) ("claims 'have little or no factual or logical interdependence'").

In the instant case, the Court lacks subject matter jurisdiction over Vitone's third-party counterclaims. First, Vitone's third-party counterclaims arise from Rhode Island common law and statutory law, rather than under the Constitution, laws, or treaties of the United States. This means that Vitone cannot find support for subject matter jurisdiction from 28 U.S.C. § 1331 (federal question subject matter jurisdiction). In addition, Vitone cannot find support for subject matter jurisdiction from 28 U.S.C. § 1332 (diversity of citizenship subject matter jurisdiction) because both Vitone and AMICA are citizens of Rhode Island. AMICA is a Rhode Island corporation and Vitone is a resident of Rhode Island. Lastly, Vitone cannot rely of 28 U.S.C. § 1367 (supplemental subject matter jurisdiction) as a basis for subject matter jurisdiction because his permissive counterclaims do not arise from the same case or controversy as the claims in the underlying action. First and foremost, Vitone alleges in the factual allegations of his third-party counterclaims that

the counterclaims arise from a "November 21, 2005 accident [that] is entirely disassociated with the July 3, 2006 accident . . .." *Ex. 4 (paragraph 11)*. Based on this allegation alone, Votone's counterclaims do not "share 'a common nucleus of operative fact' . . ." because they arise from an alleged November 21, 2005 accident that is completely distinct from the July 3, 2006 accident at issue in the underlying action. Vitone's counterclaims derive from a different set of operative facts and they involve different issues, parties, documents, witnesses and evidence. Further, the issues relating to Vitone's counterclaims are distinct from the underlying action.

## CONCLUSION

WHEREFORE, the Defendant/Third-Party Plaintiff, AMICA, respectfully requests that the Court dismiss the Third-Party Defendant's counterclaims for breach contract, negligence, and bad faith insurance practice under Rhode Island statutory law (R.I.G.L. § 9-1-33).

## REQUEST FOR HEARING

Defendant/Third-Party Plaintiff respectfully requests a hearing on this matter.

Respectfully submitted,
Third-Party Plaintiff
AMICA Mutual Insurance Company
By its attorney,

Dated:

John A. Donovan III, (#5707)
SLOANE & WALSH, LLP
Three Center Plaza, 8th Floor
Boston, MA 02108
(617) 523–6010/(617) 227–0927 – *fax*
jdonovan@sloanewalsh.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of May 2008, that the within was electronically filed with the Court using the ECF system. The following counsel of record are registered with the Court and will be served electronically through the ECF system and by regular mail, postage prepaid: David J. Oliveira, Esq., 155 South Main Street, Suite 305, Providence, RI 02903 and Todd D. White, Esq., Adler Pollock & Sheehan, P.C., One Citizens Plaza, 8th Floor, Providence, RI 02903.

Debra L. Ito

S:\VITONE, VITO AND LINDA - AM-970-1506\Pleadings\Memorandum in support of Amica's Motion to Dismiss Vitone's counterclaims.doc

# EXHIBIT 1

RECEIVED

JAN 3 0 2008

Property of U.S. District Court
District of Rhode Island

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOYCE WAGENMAKER | : | CA 08 41T |
| Plaintiff | : | |
| | : | C.A. No. 08- |
| v. | : | |
| | : | |
| AMICA MUTUAL INSURANCE COMPANY | : | ***Jury Trial Demand*** |

**COMPLAINT**

**PARTIES**

1. Plaintiff is a citizen of the State of Illinois and resides in Lake Bluff, Illinois.

2. Defendant is a mutual company organized and existing under the laws of the State of Rhode Island with its principal place of business in Lincoln, Rhode Island.

**JURISDICTION**

3. Jurisdiction is founded o 28 U.S.C. § 1332(a) this being an action between citizens of different States wherein the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

**GENERAL ALLEGATIONS**

4 On or about July 3, 2006, Plaintiff Joyce Wagenmaker was a passenger in an automobile owned and operated by an acquaintance, Vito Vitone of West Warwick, Rhode Island. The Vitone vehicle was traveling on Route 95 South in the City of Warwick at approximately 10:00 p.m.

5. At the time and place aforesaid, an unidentified vehicle operated in a reckless fashion came into contact with the Vitone Vehicle causing it to go out of

1-31

control and to sustain several collisions (hereinafter referred to as the "Accident"). That vehicle has remained unidentified despite a police investigation to locate it.

6. As a result of the events described in the immediately preceding Paragraph, Ms. Wagenmaker suffered severe personal injuries and has suffered considerable resultant financial losses and endured great pain and suffering.

7. The Vitone Vehicle was a 1999 Chevrolet Corvette and was one of several owned by Mr. Vitone.

8. At the times material hereto, Mr. Vitone insured his vehicles with Defendant Amica.

9. On or about November 25, 2005, Defendant renewed Mr. Vitone's policy of insurance, Policy Number 961138-23YV (hereinafter referred to as the "Policy") which covered a number of vehicles including the Vitone Vehicle. See, Declarations Page for Personal Auto Policy No. 961138-23YV annexed hereto as Exhibit A and incorporated herein by reference.

10. The Policy provided coverage for Uninsured Motorists Coverage in the amount of $500,000 per accident for bodily injury. *Id.*

11. At the time of the Accident, the Declarations Page annexed hereto as Exhibit A was in effect, no other Declarations Page having been issued with respect to this Policy period.

12. Plaintiff Ms. Wagenmaker is defined as an "insured" under the terms of the Policy.

13. Plaintiff, Ms. Wagenmaker made a claim against Defendant for UM benefits under the Policy to compensate her for the bodily injuries that she sustained in the Accident.

14. Notwithstanding the information set forth on its own Declarations Page, Defendant, as is more fully set forth below, has denied that there was in effect at the time of the Accident, UM coverage for the bodily injuries that Ms. Wagenmaker sustained while a passenger in the Vitone Vehicle.

15. The bases for Plaintiff Ms. Wagenmaker's claim for coverage are fully set forth in the letter of her counsel to Amica of November 5, 2007, a copy of which is annexed hereto as Exhibit B and incorporated herein by reference.

16. In summary, the Policy defines the "hit-and-run" vehicle as an uninsured vehicle and defines Ms. Wagenmaker as an "insured". While the Policy does exclude UM coverage for "an **insured** while occupying, or when struck by, any motor vehicle owned by that **insured** which is not insured for this coverage under this policy" (emphases in the original) this exclusion would not apply to Ms. Wagenmaker because, although she is defined as an insured under the Policy, and although Defendant asserts that the Vitone Vehicle, which she was occupying when she sustained the bodily injuries which are the basis for her claims was not insured for UM coverage under the policy, Ms. Wagenmaker did **NOT** own the Vitone Vehicle.

17. Despite Ms. Wagenmaker's good faith claim for UM benefits as an insured under the Policy by, *inter alia,* providing to Defendant the detailed analysis embodied in Exhibit B, Defendant summarily and without responding to the analytical components of Exhibit B denied UM coverage for these claims.

18. Instead of addressing the Plaintiff's detailed analysis of coverage, Defendant, through its agent Robert Reifel, merely asserted that, in October of 2005, Mr. Vitone had requested that Defendant remove all coverages from the Vitone Vehicle except "Other Than Collision" coverage. *See,* Letter of Robert Reifel to Plaintiff's counsel of December 5, 2007, a copy of which is annexed hereto as Exhibit C and incorporated herein by reference.

19. In summary, Defendant alleged that, because "all coverages except "Other Than Collision" coverage were eliminated from" the Vitone Vehicle before the Accident, there was no UM coverage for Ms. Wagenmaker's claims.

20. Despite Defendant's assertions, the Policy defines a "covered auto" for purposes of the UM provisions embodied in Part C, as "any vehicle shown in the Declarations".

21. As noted above, because:

a. the Vitone Vehicle was "shown in the Declarations" from that document's creation in November of 2005 until the time of the Accident;

b. the Policy defines a "covered auto" as one shown in the Declarations;

c. the Policy provides UM benefits to an insured defined as "any other person occupying your covered auto";

d. Ms. Wagenmaker was occupying the Vitone Vehicle when she sustained her bodily injuries;

1-31-08

e. the Policy's express exclusion for UM benefits when an auto is not insured for UM coverage under the Policy ***extends only to an insured who*** ***<u>owns</u> the subject*** auto;

f. Ms. Wagenmaker did **NOT** own the Vitone Vehicle, Ms. Wagenmaker was not subject to the Policy's UM exclusion.

**<u>COUNT I—DECLARATORY RELIEF</u>**

22. The allegations set forth in Paragraphs 1 through 21 above are incorporated herein as if set forth again in full.

23. By the Policy's clear, unambiguous and express terms, Plaintiff Ms. Wagenmaker is entitled to coverage under the Policy's UM provisions for the bodily injuries that she sustained in the Accident.

WHEREFORE. Plaintiff requests that this Honorable Court declare the rights and obligations of the Parties in and to the Policy, including all sums to which Plaintiff is entitled under the Policy for the bodily injuries which are the subject of her claims against Defendant, together with her costs and reasonable attorneys fees.

**<u>COUNT II—BREACH OF CONTRACT</u>**

24. The allegations set forth in Paragraphs 1 through 23 above are incorporated herein as if set forth again in full.

25. By virtue of the fact that the Policy definition of "insured" includes Ms. Wagenmkaer under the facts presented, there exists a contractual relationship between her and Defendant that gives rise to contractual rights and obligations under the Policy.

26. Defendant's acts and omissions complained of herein constitute a breach of Defendant's obligations and duties under the Policy.

27. As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered damages recoverable under the laws of the State of Rhode Island.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that exceeds the jurisdictional requirements of this Court, together with interest, costs, attorney fees, and such other relief as is appropriate in the circumstances.

**COUNT II—BAD FAITH PURSUANT TO R.I.G.L. § 9-1-33**

28. The allegations set forth in Paragraphs 1 through 27 above are incorporated herein as if set forth again in full.

29. Pursuant to R.I.G.L. § 9-1-33, Defendant had a legal duty to Ms. Wagenmaker to act in good faith in reaching its decision to deny her claim for UM benefits and in performing its obligations under the contract and applicable law.

30. Defendant breached the duty described in the immediately preceding Paragraph.

31. As a consequence of Defendant's breach, Plaintiff has suffered damages and incurred attorney fees in an effort to enforce her rights under law.

32. Pursuant to the provisions of R.I.G.L. § 9-1-33, Defendant is obligated to pay compensatory and punitive damages, as well as reasonable attorney fees as a consequence of the claims raised in this Count.

WHEREFORE, Plaintiff demands judgment against Defendant for all damages recoverable under the law of the State of Rhode Island for the matters set forth in this

1-31-08

Count, including those provided by the provisions of R.I.G.L. § 9-1-33, together with interest and costs.

**COUNT III—BREACH OF THE COMMON LAW DUTY OF GOOD FAITH AND FAIR DEALING**

33. The allegations set forth in Paragraphs 1 through 32 above are incorporated herein as if set forth again in full.

34. Defendant had an obligation under the common law of the State of Rhode Island to handle, manage and respond to Ms. Wagenmaker's claims under the Policy in a manner that complied with Defendant's common law duty of good faith and fair dealing.

35. By virtue of its acts and omissions complained of in this action including, *inter alia*, its failure to comply with the provisions of Rhode Island's Unfair Claims Settlement Practices Act, R.I.G.L. § 27-9.1-1 *et seq.*, Defendant has breached its duty more fully described in the immediately preceding Paragraph.

36. As a direct and proximate result of Defendant's breach of this duty, Plaintiff has suffered damages and has been made to resort to expensive and burdensome litigation far removed from her home.

WHEREFORE, Plaintiff demands judgment against Defendant for all damages recoverable under the law of the State of Rhode Island for the matters set forth in this

1. 31. 08

Count, together with interest and costs.

Plaintiff
By her Attorney

DAVID J. OLIVEIRA, ESQ. #2516
155 South Main Street Suite 305
Providence, RI 02903
(401) 274-9191
(401) 274-9190 (Fax)
doliveira@djolaw.com

1/29/08

***Plaintiff demands a trial by jury of all claims hereunder so triable and designates David J. Oliveira, Esq. as trial counsel.***

# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

CIVIL ACTION NO.: 08-41T

JOYCE WAGENMAKER, )
Plaintiff, ) **Jury Trial Demand**
)
)
AMICA MUTUAL INSURANCE COMPANY, )
Defendant. )

**DEFENDANT, AMICA MUTUAL INSURANCE COMPANY'S ANSWER WITH COUNTERCLAIM FOR DECLARATORY JUDGMENT**

1. Defendant, AMICA Mutual Insurance Company, admits the allegations contained in this paragraph.

2. Defendant admits the allegations contained in this paragraph.

**JURISDICTION**

3. Because the allegations contained in this paragraph state a legal conclusion, no answer is required. To the extent that the allegations of said paragraph are intended in any manner to state a claim of liability against the defendant, they are denied.

**GENERAL ALLEGATIONS**

4. Defendant admits the allegations contained in the first sentence of this paragraph and denies the remaining allegations contained in this paragraph.

5. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and calls upon the plaintiff for proof.

6. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and calls upon the plaintiff for proof.

7. Defendant admits the allegations contained in this paragraph.

8. Defendant denies the allegations contained in this paragraph.

9. Defendant admits that the policy of insurance was renewed at or about November 25, 2005 but further states that, at the request of Vitone, all coverages (except "Other Than Collision") were deleted for Vitone's 1998 Chevrolet Corvette, and, therefore, as of that date, there was no Liability, Medical Payments, Collision Loss, or Uninsured/Underinsured Motorist Coverage for Vitone's 1998 Chevrolet Corvette.

10. Defendant denies the allegations contained in this paragraph and states that Uninsured Motorist Coverage had been deleted for the 1998 Chevrolet Corvette that was involved in the subject accident.

11. Defendant denies the allegations contained in this paragraph and states that AMICA issued a "Coverage Confirmation" which confirmed that Liability, Medical Payments, Collision Loss and Uninsured Motorists Coverage were "not covered."

12. Defendant denies the allegations contained in this paragraph insofar as they relate to the 1998 Chervolet Corvette.

13. Defendant admits the allegations contained in this paragraph.

14. Defendant admits that it properly denied coverage for Plaintiff's UM claim because Uninsured Motorist Coverage for the 1998 Chervolet Corvette had been deleted from the policy.

15. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and calls upon the plaintiff for proof.

16. Defendant denies the allegations contained in this paragraph.

17. Defendant denies the allegations contained in this paragraph.

18. Defendant denies the allegations contained in this paragraph.

19. Defendant denies the allegations contained in this paragraph.

20. Defendant denies the allegations contained in this paragraph.

21. Defendant denies the allegations contained in this paragraph.

## COUNT I

22. Defendant repeats, re-alleges, and incorporates by reference its responses to the allegations in paragraphs 1 through 21 of the Plaintiff's Complaint as if expressly re-written and set forth herein.

23. Defendant denies the allegations contained in this paragraph.

WHEREFORE, the defendant respectfully request that the court enter judgment in its favor together with costs and fees.

**COUNT II**

24. Defendant repeats, re-alleges, and incorporates by reference its responses to the allegations in paragraphs 1 through 21 of the Plaintiff's Complaint as if expressly re-written and set forth herein.

25. Defendant denies the allegations contained in this paragraph.

26. Defendant denies the allegations contained in this paragraph.

27. Defendant denies the allegations contained in this paragraph.

WHEREFORE, defendant respectfully request that the court enter judgment in its favor together with costs and fees.

**COUNT II (SIC)**

28. Defendant repeats, re-alleges, and incorporates by reference its responses to the allegations in paragraphs 1 through 27 of the Plaintiff's Complaint as if expressly re-written and set forth herein.

29. Because the allegations contained in this paragraph state a legal conclusion, no answer is required. To the extent that the allegations of said paragraph are intended in any manner to state a claim of liability against the defendant, they are denied.

30. Defendant denies the allegations contained in this paragraph.

31. Defendant denies the allegations contained in this paragraph.

32. Defendant denies the allegations contained in this paragraph.

WHEREFORE, defendant respectfully request that the court enter judgment in its favor together with costs and fees.

**COUNT III (SIC)**

33. Defendant repeats, re-alleges, and incorporates by reference its responses to the allegations in paragraphs 1 through 32 of the Plaintiff's Complaint as if expressly re-written and set forth herein.

34. Because the allegations contained in this paragraph state a legal conclusion, no answer is required. To the extent that the allegations of said paragraph are intended in any manner to state a claim of liability against the defendant, they are denied.

35. Defendant denies the allegations contained in this paragraph.

36. Defendant denies the allegations contained in this paragraph.

WHEREFORE, defendant respectfully request that the court enter judgment in its favor together with costs and fees.

**FIRST AFFIRMATIVE DEFENSE**

Plaintiff has failed to state claims upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

Defendant says that if the plaintiff was injured or damaged as alleged, the plaintiff assumed the risk of such injuries or damages.

**THIRD AFFIRMATIVE DEFENSE**

The acts complained of were not committed by a person for whose conduct the Defendant is legally responsible.

**FOURTH AFFIRMATIVE DEFENSE**

This action is barred by the applicable statute of limitations.

**FIFTH AFFIRMATIVE DEFENSE**

The defendant states that the plaintiff's complaint is premature, as the liability of for any breach of contract has yet to be established.

**SIXTH AFFIRMATIVE DEFENSE**

The defendant states that the Complaint should be dismissed pursuant to Rule 12(B)(3) of the Federal Rules of Civil Procedure for improper venue.

**SEVENTH AFFIRMATIVE DEFENSE**

The defendant states that the Complaint should be dismissed pursuant to Rule 12(B)(4) of the Federal Rules of Civil Procedure for insufficiency of process.

## EIGHTH AFFIRMATIVE DEFENSE

The defendant states that the Complaint should be dismissed pursuant to Rule 12(B)(5) of the Federal Rules of Civil Procedure for insufficiency of service of process.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of waiver, estoppel, or unclean hands.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff has failed to mitigate he damages.

## ELEVENTH AFFIRMATIVE DEFENSE

The complaint shall be dismissed for failure of consideration.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's bad faith claims must be stayed pending the outcome of the breach of contract claim.

**THE DEFENDANT RESERVES THE RIGHT TO ASSERT ADDITIONAL AFFIRMATIVE DEFENSES UPON THE COMPLETION OF DISCOVERY.**

**THE DEFENDANT DEMANDS A TRIAL BY JURY IN ALL CLAIMS AND ISSUES.**

## COUNTERCLAIM FOR DECLARATORY JUDGMENT

## PRELIMINARY STATEMENT

1. This is a counterclaim for declaratory relief for the purpose of determining the parties' respective rights and obligations under insurance policies issued by AMICA Mutual Insurance Company ("AMICA") to Vito Vitone. AMICA seeks a declaration that there is no coverage under its insurance policies for claims arising out of a July 3, 2006 motor vehicle accident, including, specifically claims asserted by Vito Vitone and his passenger, Joyce Wagenmaker, for Uninsured/Underinsured Motorist Bodily Injury

coverage. This Court must determine and declare that there is no coverage because, several months before the accident, Vito Vitone specifically requested the deletion and elimination of all coverages (except "Other Than Collision" coverage) for his 1998 Chevrolet Corvette.

## PARTIES

2. Plaintiff/Defendant-in-Counterclaim, Joyce Wagenmaker, is an individual residing at 116 Hemstead Street, Lake Bluff, Illinois.

3. Defendant/Plaintiff-in-Counterclaim, AMICA Mutual Insurance Company, is a company organized and existing under the laws of Rhode Island with a principal place of business in Lincoln, Rhode Island.

## FACTS

4. In and before 2005 and 2006 AMICA issued a Rhode Island personal automobile policy (No. 961138-23YV) to Mr. Vitone and his wife, Linda Vitone. At various times, there were up to five (5) different automobiles listed on the PAP, including, a 1998 Chevrolet Corvette.

5. The PAP contained the following provisions:

<u>PART A. LIABILITY COVERAGE</u>

EXCLUSIONS

A. We do not provide Liability Coverage for any insured:

    8. Using a vehicle without a reasonable belief that the insured is entitled to do so.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

    2. Any vehicle, other than your covered auto which is:

        a. Owned by you, or
        b. Furnished or available for your regular use.

<u>PART B – MEDICAL PAYMENTS COVERAGE</u>

EXCLUSIONS

We do not provide Medical Payments Coverage for any insured for bodily injury:

5. Sustained while occupying, or when struck by, any vehicle (other than your covered auto, which is:

   a. Owned by you, or
   b. Furnished or available for your regular use.

UNINSURED MOTORISTS COVERAGE- RHODE ISLAND (PP 04 90 01 05)

EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for bodily injuries sustained by any insured:

   1. While occupying, or when struck by, any motor vehicle owned by that insured which is not insured for this coverage.

6. On or about October 13, 2005, Vito Vitone contacted AMICA's Underwriting Department and indicated that his 1998 Chevrolet Corvette was going to be "laid up" or taken off the road.

7. On or about October 13, 2005, Vitone requested the deletion and elimination of all coverages (except "Other Than Collision" coverage) for his 1998 Chevrolet Corvette. More specifically, Vitone requested that Liability, Medical Payments, Collision Loss and Uninsured/Underinsured Motorists Coverage be deleted from the PAP for the 1998 Chevrolet Corvette.

8. Consistent with Vitone's request, AMICA then made the requested changes to the PAP and a new policy was issued with effective dates of 11/25/05 to 11/26/06.

9. In the new or modified policy, all coverages (except "Other Than Collision") were deleted for Vitone's 1998 Chevrolet Corvette. As of 11/25/05, there was no liability, Medical Payments, Collision Loss, or Uninsured/Underinsured Motorist Coverage for Vitone's 1998 Chevrolet Corvette.

10. On October 13, 2005, AMICA provided Mr. Vitone with written confirmation of the elimination of coverages he had requested. The correspondence included a "Coverage Confirmation" which confirmed that Liability, Medical Payments, Collision Loss and Uninsured Motorists Coverage were "not covered."

11. After October 13, 2005, Vitone never requested that Liability, Medical Payments, Collision Loss, or Uninsured/Underinsured Motorist coverages be reinstated for the 1998 Chevrolet Corvette.

12. On July 3, 2006, Vitone was operating his 1998 Chevrolet Corvette in Cranston, Rhode Island.

13. On July 3, 2006, the plaintiff/defendant-in-counterclaim, Joyce Wagenmaker, was a passenger in Vitone's vehicle.

14. On July 3, 2006, the 1998 Chevrolet Corvette was involved in a motor vehicle accident in Cranston, Rhode Island.

15. Vitone and Wagenmaker allege that they sustained personal injuries as a result of the July 3, 2006 motor vehicle accident.

16. Vitone and Wagenmaker, by and through Rhode Island counsel, have presented claims to AMICA for Uninsured Motorist benefits under Vitone's PAP.

17. AMICA properly denied coverage for Vitone and Wagenmakers' Uninsured Motorist claims because this coverage (and all coverages (except "Other Than Collision") had been removed from the PAP at Vitone's request in or about October/November 2005.

**<u>COUNT I</u>**
**(DECLARATORY JUDGMENT)**

18. Defendant/Plaintiff-in-Counterclaim repeats, re-alleges and incorporates by reference the allegations contained in paragraphs one through seventeen above, as if expressly re-written and set forth herein.

19. In and after October/ November 2005, all coverages (except "Other Than Collision") for the 1998 Chevrolet Corvette had been deleted from the PAP issued by AMICA to/for Vitone.

20. In and after October/November 2005, there was no Liability, Medical Payments, Collision Loss, or Uninsured/Underinsured Motorist coverages in AMICA's PAP for Vitone's 1998 Chevrolet Corvette.

21. The PAP expressly provided that AMICA did not "provide Uninsured Motorist Coverage for bodily injuries sustained by any insured...while occupying...any vehicle owned by that insured which is not insured for this coverage."

22. There is no coverage under any insurance policy issued by AMICA for/to Vitone, including the PAP or any other policy, for any claims arising out of the July 3, 2006 motor vehicle accident.

23. There is no coverage under any insurance policy issued by AMICA for/to Vitone for any claims asserted by Vitone or Wagenmaker, including, any Uninsured Motorist claim.

24. AMICA properly denied coverage for any and all claims submitted by or on behalf of Vitone and Wagenmaker in connection with the July 3, 2006 accident.

25. Based upon the foregoing, AMICA states that an actual and bona fide controversy exists between the parties as to their legal relations with respect to the insurance policies issued by AMICA, and the parties' rights and liabilities can only be determined by Declaratory Judgment.

26. AMICA is entitled to a declaration that there is no coverage under any insurance policy issued by AMICA for any claims arising out of the July 3, 2006 accident, including, Uninsured Motorist claims submitted by Vitone and Wagenmaker.

WHEREFORE, Defendant/Plaintiff-in-Counterclaim, AMICA, demands that this Court enter an order in its favor against the plaintiff/defendant-in-counterclaim:

a. declaring that:

   1. there is no coverage under any insurance policy issued by AMICA, including the PAP and PULP, for any claims arising out of the July 3, 2006 accident, including, Uninsured/Underinsured Motorist claims submitted by Wagenmaker;

   2. AMICA properly denied any and all claims submitted by Wagenmaker on account of the July 3, 2006 accident, including their Uninsured/Underinsured Motorist claims;

b. awarding plaintiff-in-counterclaim the costs herein expended and such other and further relief that this Court deems just and property.

Respectfully submitted,
Defendant/Plaintiff-in-Counterclaim
AMICA Mutual Insurance Company
By its attorney,

Nicole J. Todesco

Nicole J. Todesco, Esq. (#7166)
SLOANE & WALSH, LLP
Three Center Plaza, 8th Floor
Boston, MA 02108
(617) 523-6010/(617) 227-0927 – *fax*
ntodesco@sloanewalsh.com

Dated: 2/6/08

S:\VITONE, VITO AND LINDA - AM-970-1848\Pleadings\answerwithcounterclaims 02-01-08.DOC

**CERTIFICATE OF SERVICE**

I, Nicole J. Todesco, attorney for Defendant/Third-Party Plaintiff, hereby certify that on this 6th day of February 2008, I caused a copy of the foregoing pleading(s) to be forwarded to counsel of record via First Class U.S. Mail, postage prepaid, as follows:

David J. Oliveira, Esq.
155 South Main Street, Suite 305
Providence IR 02903

Nicole J. Todesco
Nicole J. Todesco

# EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

CIVIL ACTION NO.: 08-41T

| | | |
|---|---|---|
| JOYCE WAGENMAKER,<br>Plaintiff,<br><br>v.<br><br>AMICA MUTUAL INSURANCE COMPANY,<br>Defendant/Third-Party Plaintiff,<br><br>v.<br><br>VITO VITONE,<br>Third-Party Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Jury Trial Demand** |

**AMICA MUTUAL INSURANCE COMPANY'S**
**THIRD-PARTY COMPLAINT FOR DECLARATORY JUDGMENT**

## PRELIMINARY STATEMENT

1. This is an third-party action for declaratory relief for the purpose of determining the parties' respective rights and obligations under insurance policies issued by AMICA Mutual Insurance Company ("AMICA") to Vito Vitone. AMICA seeks a declaration that there is no coverage under its insurance policies for claims arising out of a July 3, 2006 motor vehicle accident, including, specifically claims asserted by Vito Vitone and his passenger, Joyce Wagenmaker, for Uninsured/Underinsured Motorist Bodily Injury coverage. This Court must determine and declare that there is no coverage because, several months before the accident, Vito Vitone specifically requested the deletion and elimination of all coverages (except "Other Than Collision" coverage) for his 1998 Chevrolet Corvette.

## PARTIES

2. Plaintiff, Joyce Wagenmaker, is an individual residing at 116 Hemstead Street, Lake Bluff, Illinois.

3. Defendant/Third-Party Plaintiff, AMICA Mutual Insurance Company, is a company organized and existing under the laws of Rhode Island with a principal place of business in Lincoln, Rhode Island.

4. Third-Party Defendant, Vito Vitone is an individual residing a 57 Trellis Drive in West Warwick, Rhode Island and/or 290 Sanctuary Drive in East Greenwich, RI 02818-2073.

## JURISDICTION

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. sec. 2201(a) and 28 U.S.C. sec. 1367(a).

## FACTS

6. In and before 2005 and 2006 AMICA issued a Rhode Island personal automobile policy (No. 961138-23YV) to Mr. Vitone and his wife, Linda Vitone. At various times, there were up to five (5) different automobiles listed on the PAP, including, a 1998 Chevrolet Corvette.

7. The PAP contained the following provisions:

PART A. LIABILITY COVERAGE

EXCLUSIONS

A. We do not provide Liability Coverage for any insured:

8. Using a vehicle without a reasonable belief that the insured is entitled to do so.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

2. Any vehicle, other than your covered auto which is:

a. Owned by you, or
b. Furnished or available for your regular use.

PART B – MEDICAL PAYMENTS COVERAGE

EXCLUSIONS

We do not provide Medical Payments Coverage for any insured for bodily injury:

5. Sustained while occupying, or when struck by, any vehicle (other than your covered auto, which is:

a. Owned by you, or
b. Furnished or available for your regular use.

UNINSURED MOTORISTS COVERAGE- RHODE ISLAND (PP 04 90 01 05)

EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for bodily injuries sustained by any insured:

1. While occupying, or when struck by, any motor vehicle owned by that insured which is not insured for this coverage.

8. AMICA also issued a personal umbrella liability policy (No. 761138-2472) (hereinafter the "PULP" policy) to Mr. and Mrs. Vitone.

9. On or about October 13, 2005, Vito Vitone contacted AMICA's Underwriting Department and indicated that his 1998 Chevrolet Corvette was going to be "laid up" or taken off the road.

10. On or about October 13, 2005, Vitone requested the deletion and elimination of all coverages (except "Other Than Collision" coverage) for his 1998 Chevrolet Corvette. More specifically, Vitone requested that Liability, Medical Payments, Collision Loss and Uninsured/Underinsured Motorists Coverage be deleted from the PAP for the 1998 Chevrolet Corvette.

11. Consistent with Vitone's request, AMICA then made the requested changes to the PAP and a new policy was issued with effective dates of 11/25/05 to 11/26/06.

12. In the new or modified policy, all coverages (except "Other Than Collision") were deleted fro Vitone's 1998 Chevrolet Corvette. As of 11/25/05, there was no liability, Medical Payments, Collision Loss, or Uninsured/Underinsured Motorist Coverage for Vitone's 1998 Chevrolet Corvette.

13. On October 13, 2005, AMICA provided Mr. Vitone with written confirmation of the elimination of coverages he had requested. The correspondence included a "Coverage Confirmation" which confirmed that Liability, Medical Payments, Collision Loss and Uninsured Motorists Coverage were "not covered."

14. After October 13, 2005, Vitone never requested that Liability, Medical Payments, Collision Loss, or Uninsured/Underinsured Motorist coverages be reinstated for the 1998 Chevrolet Corvette.

15. On July 3, 2006, Vitone was operating his 1998 Chevrolet Corvette in Cranston, Rhode Island.

16. On July 3, 2006, the plaintiff, Joyce Wagenmaker, was a passenger in Vitone's vehicle.

17. On July 3, 2006, the 1998 Chevrolet Corvette was involved in a motor vehicle accident in Cranston, Rhode Island.

18. Vitone and Wagenmaker allege that they sustained personal injuries as a result of the July 3, 2006 motor vehicle accident.

19. Vitone and Wagenmaker, by and through Rhode Island counsel, have presented claims to AMICA for Uninsured Motorist benefits under Vitone's PAP.

20. AMICA properly denied coverage for Vitone and Wagenmakers' Uninsured Motorist claims because this coverage (and all coverages (except "Other Than Collision") had been removed from the PAP at Vitone's request in or about October/November 2005.

**COUNT I**
**(DECLARATORY JUDGMENT)**

21. Third-Party Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in paragraphs one through twenty above, as if expressly re-written and set forth herein.

22. In and after October/ November 2005, all coverages (except "Other Than Collision") for the 1998 Chevrolet Corvette had been deleted from the PAP issued by AMICA to/for Vitone.

23. In and after October/November 2005, there was no Liability, Medical Payments, Collision Loss, or Uninsured/Underinsured Motorist coverages in AMICA's PAP for Vitone's 1998 Chevrolet Corvette.

24. The PAP expressly provided that AMICA did not "provide Uninsured Motorist Coverage for bodily injuries sustained by any insured...while occupying...any vehicle owned by that insured which is not insured for this coverage."

25. There is no coverage under any insurance policy issued by AMICA for/to Vitone, including the PAP or PULP, for any claims arising out of the July 3, 2006 motor vehicle accident.

26. There is no coverage under any insurance policy issued by AMICA for/to Vitone for any claims asserted by Vitone or Wagenmaker, including, any Uninsured Motorist claim.

27. AMICA properly denied coverage for any and all claims submitted by or on behalf of Vitone and Wagenmaker in connection with the July 3, 2006 accident.

28. Based upon the foregoing, AMICA states that an actual and bona fide controversy exists between the parties as to their legal relations with respect to the insurance policies issued by AMICA, and the parties' rights and liabilities can only be determined by Declaratory Judgment.

29. This Third-Party Complaint for Declaratory Judgment arises from the same set of facts as the underlying Complaint and therefore constitutes part of the same case or controversy as the claims in the underlying action.

30. AMICA is entitled to a declaration that there is no coverage under any insurance policy issued by AMICA for any claims arising out of the July 3, 2006 accident, including, Uninsured Motorist claims submitted by Vitone and Wagenmaker.

WHEREFORE, Third-Party Plaintiff, AMICA, demands that this Court enter an order in its favor against the third-party defendant:

a. declaring that:

   1. there is no coverage under any insurance policy issued by AMICA, including the PAP and PULP, for any claims arising out of the July 3, 2006 accident, including, Uninsured/Underinsured Motorist claims submitted by Vitone and Wagenmaker;

   2. AMICA properly denied any and all claims submitted by Vitone and Wagenmaker on account of the July 3, 2006 accident, including their Uninsured/Underinsured Motorist claims;

b. awarding third-party plaintiff the costs herein expended and such other and further relief that this Court deems just and property.

Respectfully submitted,
Third-Party Plaintiff
AMICA Mutual Insurance Company
By its attorney,

Nicole J. Todesco

Nicole J. Todesco, Esq. (#7166)
SLOANE & WALSH, LLP
Three Center Plaza, 8th Floor
Boston, MA 02108
(617) 523–6010/(617) 227–0927 – *fax*
ntodesco@sloanewalsh.com

Dated: 2/6/08

S:\VITONE, VITO AND LINDA - AM-970-1808\Pleadings\THIRDPARTYCOMPLAINT 02-01-08.DOC

**CERTIFICATE OF SERVICE**

I, Nicole J. Todesco, attorney for Defendant/Third-Party Plaintiff, hereby certify that on this 6th day of February 2008, I caused a copy of the foregoing pleading(s) to be forwarded to counsel of record via First Class U.S. Mail, postage prepaid, as follows:

David J. Oliveira, Esq.
155 South Main Street, Suite 305
Providence IR 02903

Nicole J. Todesco

# EXHIBIT 4

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOYCE WAGENMAKER, Plaintiff, | |
| v. | |
| AMICA MUTUAL INSURANCE COMPANY, Defendant Third-Party Plaintiff, | C.A. No. 08-41T |
| v. | |
| VITO VITONE, Third-Party Defendant. | |

**ANSWER AND COUNTERCLAIM OF VITO VITONE TO AMICA MUTUAL INSURANCE COMPANY'S THIRD-PARTY COMPLAINT FOR DECLARATORY JUDGMENT**

1. This is not an allegation directed against the Third-party Defendant and therefore does not require a response. If, however, it is construed to be an allegation, it is hereby denied.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted that the policy contained this language.

8. Admitted.

9. Admitted.

10. Denied.

11. Denied.

12. Admitted to the extent that certain coverages were dropped.

13. Denied.

14. Denied to the extent that the Third-party Defendant did not know what coverages were deleted.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted.

19. Admitted.

20. Denied to the extent that coverage was properly denied.

**COUNT I**
**(DECLARATORY JUDGMENT)**

21. Third-party Defendant repeats and realleges paragraphs 1 through 20 as if fully set forth herein.

22. Admitted.

23. Admitted.

24. Admitted.

25. Denied.

26. Denied.

27. Denied.

28. Denied.

29. Denied.

30. Denied.

WHEREFORE, Third-party Defendant, Vito Vitone, demands that this Court enter an order in his favor against the Third-party Plaintiff:

a. Declaring that:

1. there is coverage under the applicable insurance policy issued by AMICA for the claims of Vitone arising out of the July 3, 2006 accident, including but not limited to Uninsured Underinsured Motorist coverage;

2. AMICA improperly denied said claims submitted by Vitone on account of the July 3, 2006 accident, including his Uninsured Underinsured Motorist claim;

b. Awarding third-party defendant, Vitone, the costs herein expended and such other and further relief that this Court deems just and proper.

AFFIRMATIVE DEFENSES

First Affirmative Defense

AMICA failed to provide the requisite written notice to Vitone.

Second Affirmative Defense

AMICA accepted payment for a specified number of motor vehicles insured by Vitone.

Third Affirmative Defense

AMICA may not recover based on the doctrine of waiver.

Fourth Affirmative Defense

AMICA has failed to comply with the statutory requirements as an insurer.

**Third-party Defendant's Counter-claim Against Defendant/Third-party Plaintiff**

1. The Third-party Defendant, Vito Vitone, is a resident of Warwick, Rhode Island.

2. The Defendant-Third-party Plaintiff, AMICA Mutual Insurance Company ("AMICA") is an insurance company with a principal place of business in Lincoln, Rhode Island.

3. As of November 21, 2005, Mr. Vitone had a valid policy of liability and underinsurance coverage provided by AMICA.

4. On November 21, 2005, while an AMICA insured, Mr. Vitone was seriously injured in an automobile accident on Route 95 northbound in Cranston, Rhode Island, in which the insured automobile he was operating was struck from behind.

5. The operator of the automobile which struck Mr. Vitone, Jason Silvia, had a $25,000 policy and was insured by Allstate Indemnity Company. AMICA was put on notice of this accident.

6. In early 2007, Allstate Indemnity Company paid Mr. Vitone the $25,000 policy limits and AMICA consented to this resolution.

7. As a result of this accident Mr. Vitone's medical bills alone exceed $100,000 and his lost wages exceed that amount.

8. Allstate Indemnity Company resolved its claim with Mr. Vitone after having obtained the requisite bills, records and information.

9. For the past two years, Mr. Vitone has provided medical records, medical bills, information on lost wages and even a signed statement to AMICA all in an attempt to resolve his underinsured claim.

10. Nevertheless, AMICA has continuously and willfully disregarded the Mr. Vitone's claim and refused to make any settlement offer in an attempt to resolve this matter.

10. AMICA's flagrant disregard for its obligation to its insured is a direct result of the position and action that it has chosen to take with respect to the July 3, 2006 motor vehicle accident.

11. Despite the fact that the November 21, 2005 accident is entirely disassociated with the July 3, 2006 accident, AMICA continues to refuse to act in good faith as a first party insurer in resolving the November 21, 2005 UM claim.

**COUNT I**
**BREACH OF CONTRACT**

12. Vitone alleges and reasserts paragraphs 1 through 11 as if fully set forth herein.

13. AMICA has a contractual obligation with Vitone as its insured.

14. Said obligation requires AMICA to undertake the timely and appropriate review and assessment of Vitone's November 21, 2005 UM claim, and attempt to resolve this claim.

15. Said obligation also requires that AMICA engage in settlement discussions in an effort to relieve Vitone from the burden and expense of litigation.

16. In light of the quantum of damages shown emanating from this claim, AMICA also has an obligation to make good faith efforts to resolve this claim.

17. AMICA breached it contract with Vitone by failing to undertake the appropriate review and assessment in a timely manner; failing to make any settlement offer; failing to apprise Vitone as to why AMICA has not made any settlement offer; and failing to resolve this claim based on the facts and circumstances.

WHEREFORE, as a result of AMICA's breach of contract, Vitone seeks full and complete compensation for the reasonable value of his loss in this accident, including any costs and fees this Court may award.

**COUNT II**
**NEGLIGENCE**

18. Vitone alleges and reasserts paragraphs 1 through 17 as if fully set forth herein.

19. AMICA was negligent in its duty to undertake the timely and appropriate review and assessment of Vitone's November 21, 2005 UM claim.

20. AMICA was also negligent in failing to engage in settlement discussions in an effort to relieve Vitone from the burden and expense of litigation, or to even apprise him of the status.

21. AMICA was further negligent in failing to resolve this claim in light of the circumstances of the accident and the resulting damages suffered by Vitone.

WHEREFORE, as a result of AMICA's negligence, Vitone seeks full and complete compensation for the reasonable value of his loss in this accident, including any costs and fees as this Court may find appropriate.

**COUNT III**
**BAD FAITH INSURANCE PRACTICE (R.I.G.L. §9-1-33)**

22. Vitone alleges and reasserts paragraphs 1 through 21 as if fully set forth herein.

23. AMICA is fully cognizant of its obligations to act in good faith with regard to resolving claims, yet it has steadfastly resisted its obligation to Vitone for an accident that is many magnitudes higher than what Vitone was able to recover against the third-party tortfeasor.

24. AMICA has acted in bad faith in light of its disregard for its insured in failing to appropriately review and assess the facts of the November 21, 2005 accident; in failing to make any settlement offer; and in failing to resolve this claim.

25. Additionally, AMICA's disregard for its insured is not only as a result of the substance of the November 21, 2005 claim but also as a direct result of being infected by the potential July 3, 2006 claim.

WHEREFORE, as a result of AMICA's willful and bad faith failure to resolve the November 21, 2005 claim, Vitone seeks full and complete recovery for the value of his compensatory loss in this accident, as well punitive damages as administered by this Court for bad faith insurance practice, and any additional costs and fees as this Court finds appropriate.

**Plaintiff demands a jury for all of its viable counterclaims in this matter.**

Third-party Defendant,
Vito Vitone
By his Counsel,

/s/ Todd D. White

Todd D. White, Esq.
Adler, Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 751-0604

CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of April, 2008, I electronically filed the attached Answer and Counterclaim of Vito Vitone to Amica Mutual Insurance Company's Third-Party Complaint for Declaratory Judgment with the Court using the ECF system. The following counsel of record are registered with the Court and will be served electronically through the ECF system:

David J. Oliveira, Esq.
155 South Main Street, Suite 305
Providence, RI 02903
Nicole J. Todesco, Esq.
Sloane & Walsh, LLP
Three Center Plaza, 8th Floor
Boston, MA 02108

/s/ Todd D. White

448428_1.doc