# EXHIBIT 1

RECEIVED

JAN 3 0 2008

Property of U.S. District Court
District of Rhode Island

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JOYCE WAGENMAKER :
Plaintiff :
: C.A. No. 08-
v. :
:
AMICA MUTUAL INSURANCE : *Jury Trial Demand*
COMPANY :

CA 08 41T

**COMPLAINT**

**PARTIES**

1. Plaintiff is a citizen of the State of Illinois and resides in Lake Bluff, Illinois.

2. Defendant is a mutual company organized and existing under the laws of the State of Rhode Island with its principal place of business in Lincoln, Rhode Island.

**JURISDICTION**

3. Jurisdiction is founded o 28 U.S.C. § 1332(a) this being an action between citizens of different States wherein the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

**GENERAL ALLEGATIONS**

4 On or about July 3, 2006, Plaintiff Joyce Wagenmaker was a passenger in an automobile owned and operated by an acquaintance, Vito Vitone of West Warwick, Rhode Island. The Vitone vehicle was traveling on Route 95 South in the City of Warwick at approximately 10:00 p.m.

5. At the time and place aforesaid, an unidentified vehicle operated in a reckless fashion came into contact with the Vitone Vehicle causing it to go out of

1-31

control and to sustain several collisions (hereinafter referred to as the "Accident"). That vehicle has remained unidentified despite a police investigation to locate it.

6. As a result of the events described in the immediately preceding Paragraph, Ms. Wagenmaker suffered severe personal injuries and has suffered considerable resultant financial losses and endured great pain and suffering.

7. The Vitone Vehicle was a 1999 Chevrolet Corvette and was one of several owned by Mr. Vitone.

8. At the times material hereto, Mr. Vitone insured his vehicles with Defendant Amica.

9. On or about November 25, 2005, Defendant renewed Mr. Vitone's policy of insurance, Policy Number 961138-23YV (hereinafter referred to as the "Policy") which covered a number of vehicles including the Vitone Vehicle. See, Declarations Page for Personal Auto Policy No. 961138-23YV annexed hereto as Exhibit A and incorporated herein by reference.

10. The Policy provided coverage for Uninsured Motorists Coverage in the amount of $500,000 per accident for bodily injury. *Id.*

11. At the time of the Accident, the Declarations Page annexed hereto as Exhibit A was in effect, no other Declarations Page having been issued with respect to this Policy period.

12. Plaintiff Ms. Wagenmaker is defined as an "insured" under the terms of the Policy.

1/-31

13. Plaintiff, Ms. Wagenmaker made a claim against Defendant for UM benefits under the Policy to compensate her for the bodily injuries that she sustained in the Accident.

14. Notwithstanding the information set forth on its own Declarations Page, Defendant, as is more fully set forth below, has denied that there was in effect at the time of the Accident, UM coverage for the bodily injuries that Ms. Wagenmaker sustained while a passenger in the Vitone Vehicle.

15. The bases for Plaintiff Ms. Wagenmaker's claim for coverage are fully set forth in the letter of her counsel to Amica of November 5, 2007, a copy of which is annexed hereto as Exhibit B and incorporated herein by reference.

16. In summary, the Policy defines the "hit-and-run" vehicle as an uninsured vehicle and defines Ms. Wagenmaker as an "insured". While the Policy does exclude UM coverage for "an **insured** while occupying, or when struck by, any motor vehicle owned by that **insured** which is not insured for this coverage under this policy" (emphases in the original) this exclusion would not apply to Ms. Wagenmaker because, although she is defined as an insured under the Policy, and although Defendant asserts that the Vitone Vehicle, which she was occupying when she sustained the bodily injuries which are the basis for her claims was not insured for UM coverage under the policy, Ms. Wagenmaker did **NOT** own the Vitone Vehicle.

17. Despite Ms. Wagenmaker's good faith claim for UM benefits as an insured under the Policy by, *inter alia,* providing to Defendant the detailed analysis embodied in Exhibit B, Defendant summarily and without responding to the analytical components of Exhibit B denied UM coverage for these claims.

1-31-08

18. Instead of addressing the Plaintiff's detailed analysis of coverage, Defendant, through its agent Robert Reifel, merely asserted that, in October of 2005, Mr. Vitone had requested that Defendant remove all coverages from the Vitone Vehicle except "Other Than Collision" coverage. *See,* Letter of Robert Reifel to Plaintiff's counsel of December 5, 2007, a copy of which is annexed hereto as Exhibit C and incorporated herein by reference.

19. In summary, Defendant alleged that, because "all coverages except "Other Than Collision" coverage were eliminated from" the Vitone Vehicle before the Accident, there was no UM coverage for Ms. Wagenmaker's claims.

20. Despite Defendant's assertions, the Policy defines a "covered auto" for purposes of the UM provisions embodied in Part C, as "any vehicle shown in the Declarations".

21. As noted above, because:

a. the Vitone Vehicle was "shown in the Declarations" from that document's creation in November of 2005 until the time of the Accident;

b. the Policy defines a "covered auto" as one shown in the Declarations;

c. the Policy provides UM benefits to an insured defined as "any other person occupying your covered auto";

d. Ms. Wagenmaker was occupying the Vitone Vehicle when she sustained her bodily injuries;

1-31-08

e. the Policy's express exclusion for UM benefits when an auto is not insured for UM coverage under the Policy ***extends only to an insured who <u>owns</u> the subject*** auto;

f. Ms. Wagenmaker did **NOT** own the Vitone Vehicle, Ms. Wagenmaker was not subject to the Policy's UM exclusion.

**<u>COUNT I—DECLARATORY RELIEF</u>**

22. The allegations set forth in Paragraphs 1 through 21 above are incorporated herein as if set forth again in full.

23. By the Policy's clear, unambiguous and express terms, Plaintiff Ms. Wagenmaker is entitled to coverage under the Policy's UM provisions for the bodily injuries that she sustained in the Accident.

WHEREFORE. Plaintiff requests that this Honorable Court declare the rights and obligations of the Parties in and to the Policy, including all sums to which Plaintiff is entitled under the Policy for the bodily injuries which are the subject of her claims against Defendant, together with her costs and reasonable attorneys fees.

**<u>COUNT II—BREACH OF CONTRACT</u>**

24. The allegations set forth in Paragraphs 1 through 23 above are incorporated herein as if set forth again in full.

25. By virtue of the fact that the Policy definition of "insured" includes Ms. Wagenmkaer under the facts presented, there exists a contractual relationship between her and Defendant that gives rise to contractual rights and obligations under the Policy.

1-31-08

26. Defendant's acts and omissions complained of herein constitute a breach of Defendant's obligations and duties under the Policy.

27. As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered damages recoverable under the laws of the State of Rhode Island.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that exceeds the jurisdictional requirements of this Court, together with interest, costs, attorney fees, and such other relief as is appropriate in the circumstances.

**COUNT II—BAD FAITH PURSUANT TO R.I.G.L. § 9-1-33**

28. The allegations set forth in Paragraphs 1 through 27 above are incorporated herein as if set forth again in full.

29. Pursuant to R.I.G.L. § 9-1-33, Defendant had a legal duty to Ms. Wagenmaker to act in good faith in reaching its decision to deny her claim for UM benefits and in performing its obligations under the contract and applicable law.

30. Defendant breached the duty described in the immediately preceding Paragraph.

31. As a consequence of Defendant's breach, Plaintiff has suffered damages and incurred attorney fees in an effort to enforce her rights under law.

32. Pursuant to the provisions of R.I.G.L. § 9-1-33, Defendant is obligated to pay compensatory and punitive damages, as well as reasonable attorney fees as a consequence of the claims raised in this Count.

WHEREFORE, Plaintiff demands judgment against Defendant for all damages recoverable under the law of the State of Rhode Island for the matters set forth in this

1-31-08

Count, including those provided by the provisions of R.I.G.L. § 9-1-33, together with interest and costs.

## COUNT III—BREACH OF THE COMMON LAW DUTY OF GOOD FAITH AND FAIR DEALING

33. The allegations set forth in Paragraphs 1 through 32 above are incorporated herein as if set forth again in full.

34. Defendant had an obligation under the common law of the State of Rhode Island to handle, manage and respond to Ms. Wagenmaker's claims under the Policy in a manner that complied with Defendant's common law duty of good faith and fair dealing.

35. By virtue of its acts and omissions complained of in this action including, *inter alia*, its failure to comply with the provisions of Rhode Island's Unfair Claims Settlement Practices Act, R.I.G.L. § 27-9.1-1 *et seq.*, Defendant has breached its duty more fully described in the immediately preceding Paragraph.

36. As a direct and proximate result of Defendant's breach of this duty, Plaintiff has suffered damages and has been made to resort to expensive and burdensome litigation far removed from her home.

WHEREFORE, Plaintiff demands judgment against Defendant for all damages recoverable under the law of the State of Rhode Island for the matters set forth in this

1-31-08

Count, together with interest and costs.

Plaintiff
By her Attorney

DAVID J. OLIVEIRA, ESQ. #2516
155 South Main Street Suite 305
Providence, RI 02903
(401) 274-9191
(401) 274-9190 (Fax)
doliveira@djolaw.com

1/29/08

***Plaintiff demands a trial by jury of all claims hereunder so triable and designates David J. Oliveira, Esq. as trial counsel.***

# EXHIBIT A

Amica Mutual Insurance Company
Lincoln, Rhode Island



**DECLARATIONS** | **PERSONAL AUTO POLICY NO.** 961138-23YV

**NAMED INSURED AND ADDRESS**
VITO VITONE AND
LINDA VITONE
290 SANCTUARY DR
EAST GREENWICH RI 02818

**POLICY PERIOD: 12:01 A.M., STANDARD TIME**
**From:** NOVEMBER 25, 2005
**To:** NOVEMBER 25, 2006

DUPLICATE

| Auto No. | DESCRIPTION OF AUTO(S) OR TRAILER(S) | LOSS PAYEE |
|---|---|---|
| 1 | 2000 CHRYSLER 300M SEDAN<br>VIN 2C3HE66G4YH168716<br>USE: AVG DAILY MILES LESS THAN 30 | |
| 2 | 1994 MERCEDES-BENZ E420 SEDAN<br>VIN WDBEA34E2RC043128<br>USE: AVG DAILY MILES 30 OR MORE | |
| 3 | 2002 LINCOLN LS SEDAN<br>VIN 1LNHM86S82Y711671<br>USE: AVG DAILY MILES LESS THAN 30 | FORD MOTOR CREDIT CORP.<br>P.O. BOX 105704<br>ATLANTA, GA 30348 |
| 4 | 1999 JEEP CHEROKEE<br>CLASSIC UT<br>VIN 1J4FF68S7XL528459<br>USE: AVG DAILY MILES LESS THAN 30 | |
| 5 | 1998 CHEVROLET CORVETTE<br>CONVERTIBLE<br>VIN 1G1YY32G8W5115652<br>USE: AVG DAILY MILES LESS THAN 30 | |
| 6 | 2005 HYUNDAI TUCSON GLS AWD/LX<br>AWD UTL<br>VIN KM8JN72D95U194649<br>USE: AVG DAILY MILES LESS THAN 30 | |

The Auto(s) or Trailer(s) described in this policy is principally garaged at the above address unless otherwise stated.

SAFE DRIVER PLAN CHARGEABLE POINTS - 2

**RATES ARE BASED ON THE FOLLOWING HOUSEHOLD DRIVERS**

| Driver No. | NAME | DRIVER'S LICENSE NUMBER | Date of Birth Mo. | Day | Year | Male or Female | Married or Single | Date First Licensed Mo. | Year |
|---|---|---|---|---|---|---|---|---|---|
| 1 | VITO VITONE | 8824030 | 10 | 05 | 46 | M | M | 10 | 63 |
| 2 | LINDA VITONE | 8822494 | 08 | 02 | 49 | F | M | 08 | 65 |
| 3 | ANTHONY J. VITONE | 2040059 | 08 | 15 | 84 | M | S | 06 | 01 |
| 4 | | | | | | | | | |
| 5 | | | | | | | | | |
| 6 | | | | | | | | | |

1-31-08

**Amica Mutual Insurance Company**
Lincoln, Rhode Island



**CONTINUATION OF DECLARATIONS FOR PERSONAL AUTO POLICY NO.** 961138-23YV

**NAMED INSURED AND ADDRESS**

VITO VITONE AND
LINDA VITONE
290 SANCTUARY DR
EAST GREENWICH RI 02818

DUPLICATE

COVERAGE IS PROVIDED WHERE A PREMIUM AND A LIMIT OF LIABILITY IS SHOWN FOR THE COVERAGE

| COVERAGES | LIMIT OF LIABILITY | PREMIUMS AUTO 1 2000 CHRY | AUTO 2 1994 MERC | AUTO 3 2002 LINC |
|---|---|---|---|---|
| **A. LIABILITY** | $ 500,000 each accident | $ 607.00 | $ 753.00 | $ 671.00 |
| **B. MEDICAL PAYMENTS** | $ 5,000 each person | $ 13.00 | $ 17.00 | $ 15.00 |
| **C. UNINSURED MOTORISTS** | $ * each accident | | | |
| **D. DAMAGE TO YOUR AUTO** | (ACV means Actual Cash Value) | | | |
| **1. Collision Loss** ACV minus deductible of | AUTO 1 $ 500 · AUTO 2 $ 500 · AUTO 3 $ 500 | $ 403.00 | $ 423.00 | $ 548.00 |
| **2. Other Than Collision Loss** ACV minus deductible of | AUTO 1 $ 500 · AUTO 2 $ 500 · AUTO 3 $ 500 | $ 61.00 | $ 84.00 | $ 79.00 |
| **TOWING AND LABOR COSTS** | $ 100 each disablement | $ 8.00 | $ 17.00 | $ 8.00 |

*UNINSURED MOTORISTS - BODILY INJURY
POLICY LIMIT $500,000 EACH ACCIDENT

**PARKING ARRANGEMENTS**

AUTO 1 OFF STREET
AUTO 2 IN GARAGE
AUTO 3 IN GARAGE

TOTAL PREMIUM FOR EACH AUTO $ 1,092.00 $ 1,294.00 $ 1,321.00

1-31-08

# Amica Mutual Insurance Company

Lincoln, Rhode Island



## CONTINUATION OF DECLARATIONS FOR PERSONAL AUTO POLICY NO. 961138-23YV

**NAMED INSURED AND ADDRESS**

VITO VITONE AND
LINDA VITONE
290 SANCTUARY DR
EAST GREENWICH RI 02818

DUPLICATE

COVERAGE IS PROVIDED WHERE A PREMIUM AND A LIMIT OF LIABILITY IS SHOWN FOR THE COVERAGE

| COVERAGES | LIMIT OF LIABILITY | PREMIUMS AUTO 4 1999 JEEP | AUTO 5 1998 CHEV | AUTO 6 2005 HYUN |
|---|---|---|---|---|
| **A. LIABILITY** | $ 500,000 each accident | $ 1,895.00 | $ 671.00 | $ 671.00 |
| **B. MEDICAL PAYMENTS** | $ 5,000 each person | $ 43.00 | $ 15.00 | $ 15.00 |
| **C. UNINSURED MOTORISTS** | $ * each accident | | | |
| **D. DAMAGE TO YOUR AUTO** | (ACV means Actual Cash Value) | | | |
| **1. Collision Loss** ACV minus deductible of | AUTO 4 $ 500; AUTO 5 $ 500; AUTO 6 $ 500 | $ 968.00 | $ 500.00 | $ 528.00 |
| **2. Other Than Collision Loss** ACV minus deductible of | AUTO 4 $ 500; AUTO 5 $ 500; AUTO 6 $ 500 | $ 153.00 | $ 88.00 | $ 74.00 |
| **TOWING AND LABOR COSTS** | $ 100 each disablement | $ 8.00 | $ 8.00 | $ 8.00 |

*UNINSURED MOTORISTS - BODILY INJURY
POLICY LIMIT $500,000 EACH ACCIDENT
POLICY PREMIUM $392.00

**PARKING ARRANGEMENTS**

AUTO 4 OFF STREET
AUTO 5 IN GARAGE
AUTO 6 IN GARAGE

[redacted]

| | | | |
|---|---|---|---|
| TOTAL PREMIUM FOR EACH AUTO | $ 3,067.00 | $ 1,282.00 | $ 1,296.00 |
| UNINSURED MOTORISTS - BODILY INJURY POLICY PREMIUM | | | $ 392.00 |
| TOTAL PREMIUM | | | $ 9,744.00 |

1-31-08

Amica Mutual Insurance Company
Lincoln, Rhode Island



**CONTINUATION OF DECLARATIONS FOR PERSONAL AUTO POLICY NO.** 961138-23YV

**NAMED INSURED AND ADDRESS**

VITO VITONE AND
LINDA VITONE
290 SANCTUARY DR
EAST GREENWICH RI 02818

DUPLICATE

**SPECIAL DISCOUNTS**

PASSIVE RESTRAINT DISCOUNT AUTOS 1,2,3,4,5,6
ANTI-LOCK BRAKING SYSTEM AUTOS 1,2,3,5,6
MULTI-CAR DISCOUNT
ANTI-THEFT DEVICE DISCOUNT AUTOS 1,2,3,5,6

**Form and Endorsements made part of this policy at time of issue**

| | |
|---|---|
| PP 00 01 01 05 | PERSONAL AUTO POLICY |
| PP 03 03 04 86 | TOWING AND LABOR COSTS COVERAGE |
| AM 00 57 10 05 | LOSS PAYABLE CLAUSE |
| PP 04 90 01 05 | UNINSURED MOTORISTS COVERAGE - RHODE ISLAND |
| PP 01 89 02 05 | AMENDMENT OF POLICY PROVISIONS - RHODE ISLAND |
| AM 00 28 12 01 | AMENDMENT OF PERSONAL AUTO POLICY PROVISIONS |
| PP 03 09 01 05 | SINGLE LIABILITY LIMIT |
| PP 04 38 06 98 | SINGLE UNINSURED MOTORISTS LIMIT - RHODE ISLAND |
| PP 13 01 12 99 | COVERAGE FOR DAMAGE TO YOUR AUTO EXCLUSION ENDORSEMENT |
| RI 00 06 02 01 | RHODE ISLAND MUTUAL PROVISIONS - NON-DIVIDEND POLICY |

1-31-08

**This policy shall not be valid unless countersigned by our authorized agent or representative.**

**Countersigned by** Peter H. Cameron 14

**Authorized Representative**

# EXHIBIT B

djo David J. Oliveira, Esq.
Attorney & Counsellor at Law

155 South Main Street, Suite 305
Providence, RI 02903
ph. 401.274.9191
fax. 401.274.9190
doliveira@djolaw.com
www.djolaw.com

Admitted in RI & MA

November 5, 2007

Mr. Robert Reifel, CPCU
Sr. Claims Supervisor
Amica
P.O. Box 6008
Providence, RI 02940-6008

***Re: Vito Vitone/ File No. L99200605081***
***Accident of July 3, 2006***

Dear Mr. Reifel:

This firm is legal counsel to Joyce Wagenmaker with regard to an automobile accident which occurred on July 3, 2006 on Route 95 North in Warwick, Rhode Island (the "Accident"). At that time, Ms. Wagenmaker was a passenger in a vehicle owned and operated by your insured, Vito Vitone of West Warwick, Rhode Island who, we understand, promptly notified Amica of the Accident and made a claim for UM coverage with respect thereto. I am in receipt of your letter of May 30, 2007 to Todd White, Mr. Vitone's counsel, in which you reaffirm Amica's denial of UM coverage to Mr. Vitone with respect to the Accident. I write to you now to address claims by Ms. Wagenmaker for UM coverage under Mr. Vitone's policy of insurance.

While processing her claims against Safeco, the carrier that provided UM coverage to Ms. Wagenmaker, I recently obtained a complete copy of Mr. Vitone's policy with Amica, Policy Number: 961138-23YV (hereinafter referred to as the "Policy") and have carefully reviewed Part C of the Policy which governs claims for UM coverage. I have also reviewed the Policy's Declarations Page that lists certain vehicles which Mr. Vitone owned at the time of the Accident. Finally, I analyzed this information against the backdrop of my understanding that the vehicle involved in the Accident, a 1998 Chevrolet Corvette listed as Auto No. 5 on the Policy's Declarations Page (hereinafter referred to as the "Vitone Vehicle"), had been removed from the Policy over the winter months, with coverage not having been replaced prior to the Accident. While it appears that Paragraph A. 1. of the Exclusions section of Part C of the Policy[1] might deny UM coverage to Mr. Vitone, we believe that the clear and unambiguous Policy terms would afford coverage to Ms. Wagenmaker for the serious injuries she sustained in the Accident. In this regard, I provide the following analysis with all citations and discussion of contract language meant to refer to the Policy.

---

[1] I discuss this exclusion in more detail below, specifically its application to Ms. Wagenmaker.

1-31-08

David J. Oliveira, Esq.
Attorney & Counsellor at Law

Mr. Robert Reifel, CPCU
Page 2
November 5, 2007

First, Paragraph A of the Insuring Agreement in Part C, provides that, if Ms. Wagenmaker is an **insured** under Part C, then Amica must pay to her compensatory damages for any bodily injuries that she received, to the extent that she is legally entitled to recover such compensation from the owner or operator of an **uninsured motor** vehicle. The only other requirement under this Paragraph is that the owner's or operator's liability must arise out of the ownership, maintenance or use of the **uninsured motor vehicle.** Those terms that I have placed in bold type above are defined in Paragraph B of Part C's Insuring Agreement. I turn now to these definitions.

Considering first whether the Accident involved an **uninsured motor vehicle,** I note that Paragraph C. 3. defines such a vehicle as including one:

> 3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:
>
> * * *
>
> c. **Your covered auto.**

The Police Report concerning the Accident, as well as all witness statements known to us, establish that the Vitone Vehicle was struck in the rear by another vehicle that fled the scene and which has never been identified. As discussed more fully in the following paragraph, because the Vitone Vehicle was still designated as Auto No. 5 on the Declarations Page at the time of the Accident, it was a **covered auto.** Thus, Ms. Wagenmaker suffered bodily injuries for which the owner or operator of an **uninsured motor vehicle** is legally liable. I turn now to a consideration of whether she was defined as an **insured** as, if she was, she is entitled, in the first instance, to coverage under Part C, unless otherwise excluded by the Policy's terms.

An **"insured"** is defined under Paragraph B. of Part C's Insuring Agreement. In addition to the named insured (Vito Vitone and Linda Vitone) Paragraph B. 2. includes within this definition, "[a]ny other person occupying **your covered auto**." Part C. does not contain a definition of the term **your covered auto,** thus requiring reference to Paragraph J. of the Policy's general Definitions section which begins on Page 1 of 14. Specifically, Paragraph J. 1. defines **your covered auto** as "[a]ny vehicle shown in the Declarations." Accordingly, as the Vitone Vehicle was shown in the Declarations on the date of the Accident, Ms. Wagenmaker was an **insured** for purposes of coverage under the Insuring Agreement of Part C unless that coverage was otherwise excluded. For that reason, I turn to the applicable exclusions under Part C.

We understand that the only basis upon which Amica has denied UM coverage for Mr. Vitone with respect to the Accident, is the fact that he had removed the Vitone Vehicle from the Policy after the Policy (including the Declarations) was issued but before the Accident occurred.

1-31-08

David J. Oliveira, Esq.
Attorney & Counsellor at Law

Mr. Robert Reifel, CPCU
Page 3
November 5, 2007

Presumably, in reaching this conclusion, Amica relied on Paragraph A. 1. of Part C's language governing Exclusions which would require that we consider whether, under the Policy's language, this exclusion would apply to Ms. Wagenmaker, as well. With that in mind, I consider now the Exclusions provisions under Part C of the policy that begin on Page 7 of 14, thereof.

Paragraph A. 1. provides, in relevant part:

> A. We do not provide Uninsured Motorists Coverage for bodily injury sustained by:
>
> 1. By an **insured** while occupying, or when struck by, any motor vehicle owned by that **insured** which is not insured for this coverage under this policy.

As is apparent, this section excludes coverage under Part C for an insured who is occupying a vehicle which is not insured for coverage under Part C, where that vehicle is owned by the insured. Thus, because Mr. Vitone owned the Vitone Vehicle, to the extent that there was no coverage on the Vitone Vehicle under Part C, he would be excluded from UM coverage. Of course, as Ms. Wagenmaker had no ownership or other interest in the Vitone Vehicle, this exclusion, **on its face,** would not apply to her. Accordingly, we believe that Ms. Wagenmaker satisfied all requirements for coverage under Part C and that the Policy does not contain any language that would act to exclude this coverage.

Based on the foregoing analysis of Policy terms that are clear and unambiguous, we hereby make demand that Amica acknowledge Ms. Wagenmaker's entitlement to UM coverage under the Policy, for the bodily injuries that she sustained in the Accident. Once we receive such acknowledgement, I shall provide to you promptly a comprehensive demand for settlement. In the interim, kindly call with any specific questions or comments that you may have.

Sincerely,

D J Oliveira

David J. Oliveira, Esq.

DJO: nlp
cc: Mr. David Reeves, Safeco Insurance Company of Illinois

1-31-08

# EXHIBIT C

Amica

AUTO HOME LIFE

100th ANNIVERSARY

CORPORATE OFFICE
One Hundred Amica Way
Lincoln, Rhode Island 02865-1156
Mail: PO Box 6008, Providence, RI 02940-6008
Toll-free: 1-800-62-Amica (1-800-622-6422)
Claims Fax: 1-866-774-3318
Sales/Service Fax: 1-401-333-4610

December 5, 2007

David J. Oliveira, Esq.
135 South Main Street, Suite 305
Providence, RI 02903

DEC 06 2007

Re:
File Number: L99200605081
Our Insured: Vito Vitone
Your Client: Joyce Wagenmaker
Date of Loss: 07/03/06

Dear Mr. Oliveira:

I am writing to respond to your November 5, 2008 correspondence concerning the above-reference matter.

After careful and thoughtful consideration of the information and contentions contained in your letter, I regret to inform you that the Personal Auto Policy (Policy No 961138-23YV) issued by AMICA Mutual Insurance Company affords no coverage for claims arising out of the July 3, 2006 motor vehicle accident. More specifically, there is no coverage under the policy for your client's claim for Uninsured Motorist ("UM") benefits.

Independent of the application of the Policy exclusion you have referred to, coverage is lacking in this matter in light of the following circumstances:

In October of 2005, Vito Vitone contacted AMICA and requested the deletion and elimination of all coverages (except "Other Than Collision" coverage) for his 1998 Chevrolet Corvette. Consistent with this request, AMICA then made the necessary changes and a new policy was issued with the corresponding reductions in premium. AMICA also provided Mr. Vitone with written confirmation of the elimination of coverages via correspondence dated October 13, 2005. The correspondence included a "Coverage Confirmation" which indicated that Liability, Medical Payments, Collision Loss and Uninsured Motorists Coverage were "not covered." Simply put, the insurance contract was modified and these coverages were removed.

1, 31-08

Because all coverages (except "Other Than Collision" coverage) were eliminated for 1998 Chevrolet Corvette prior to the subject accident, there is no coverage for any UM claim presented by or on behalf of your client. Simply put, such coverage did not exist for this vehicle.

In closing, please note that AMICA does not and should not be deemed to have waived all or any rights or grounds it may have in connection with the above-referenced policy, nor should it be deemed to be estopped from asserting all or any coverage defenses that are currently available under the policy or any defenses which may become applicable in this matter. No act of AMICA shall be construed as an admission of liability or as an admission or coverage.

Should you have any additional information or arguments which you believe bear on our coverage determination, or should you have any questions, please do not hesitate to contact me.

I will be available to you to discuss the position we have taken. Should you, however, wish to contact the Rhode Island Insurance Division regarding this matter, it maintains a section to investigate Complaints at 223 Richmond Street, Providence, RI, 02903, The Rhode Island Insurance Division can be contacted by telephone at 401-277-2223.

The above paragraph is required by Rhode Island Regulations.

Thank you.

Sincerely yours,

Robert Reifel, CPCU
Sr. Claims Supervisor
Email: rreifel@amica.com

RTR

Cc: David Reeves, Safeco Insurance Company of Illinois

1-31-08