MPD:af 07-289

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF ILLINOIS<br>vs.<br>AMICA MUTUAL INSURANCE COMPANY and JOYCE WAGENMAKER | C.A. No. 08-145S |

**PLAINTIFF SAFECO INSURANCE COMPANY OF ILLINOIS' OBJECTION TO DEFENDANT AMICA MUTUAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Now comes Safeco Insurance Company of Illinois ("Safeco") and hereby objects to Amica Mutual Insurance Company's Motion for Summary Judgment.

As grounds in support of its objection, Safeco relies upon the attached Memorandum of Law.

/s/ Mark P. Dolan
Mark P. Dolan, Esq. (#3280)
RICE DOLAN & KERSHAW
*Attorneys for Plaintiff*
*Safeco Insurance Company of Illinois*
72 Pine Street, Suite 300
Providence, RI 02903
(401) 272-8800 telephone
(401) 421-7218 fax

**CERTIFICATION**

The undersigned hereby certifies that a true copy of the within document has been sent to counsel of record, as follows, this 15th day of September, 2008:

David Oliveira, Esq.
155 South Main Street, Suite 305
Providence, RI 02903

Todd White, Esq.
Adler, Pollack & Sheehan, PC
One Citizens Plaza, 8th Floor
Providence, RI 02903

John A. Donovan, III, Esq.
Sloane and Walsh, LLP
3 Center Plaza, 8th Floor
Boston, MA 02108

/s/ Mark P. Dolan

MPD:af 07-289

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SAFECO INSURANCE COMPANY OF ILLINOIS

vs. C.A. No. 08-145S

AMICA MUTUAL INSURANCE COMPANY and JOYCE WAGENMAKER

**PLAINTIFF SAFECO INSURANCE COMPANY OF ILLINOIS' MEMORANDUM IN SUPPORT OF ITS OBJECTION TO AMICA MUTUAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF SAFECO INSURANCE COMPANY OF ILLINOIS' CROSS MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on cross motions for summary judgment. For the following reasons, Safeco Insurance Company of Illinois ("Safeco") requests that this Court grant its cross motion for summary judgment and deny Amica Mutual Insurance Company's ("Amica") motion for summary judgment.

## I. FACTS/TRAVEL

This declaratory judgment action arises out of a motor vehicle accident that occurred on July 3, 2006. On that date, Joyce Wagenmaker ("Wagenmaker") was a passenger in a vehicle owned and operated by Vito Vitone ("Vitone"). Vitone was operating a 1998 Chevrolet Corvette which was identified as a "covered auto" under Amica's Personal Auto Policy issued to Vito and Linda Vitone, Policy No. 961138-23YV with effective dates of coverage November 25, 2005 to November 25, 2006. See Exhibit A. The Vitone Corvette was allegedly involved in a collision with an unidentified vehicle causing personal injuries to Vitone and Wagenmaker.

Wagenmaker maintained a Personal Auto Policy with Safeco, Policy No. Z3620833 with effective dates of coverage May 5, 2006 through November 5, 2006. See Exhibit B. That policy provided uninsured motorist coverage as set forth in the policy.

Wagenmaker has presented uninsured motorist claims to both Amica and Safeco.

Safeco filed the instant declaratory judgment action seeking a declaration that Wagenmaker is entitled to uninsured motorist coverage under Amica's policy and that no uninsured motorist coverage is afforded to Wagenmaker under Safeco's policy.

Amica erroneously contends that there is no uninsured motorist coverage available to Wagenmaker under its policy claiming that any uninsured motorist coverage afforded to the 1998 Chevrolet Corvette was deleted from the insurance policy at Vitone's request prior to the July 3, 2006 accident. As will be shown, Amica's position is misplaced.

## II. STATEMENT OF UNDISPUTED FACTS

1. Amica issued a Rhode Island Personal Automobile Policy (No. 941138-23YV) to Vito Vitone and his wife Linda Vitone that was in effect on July 3, 2006. The policy provides $300,000 in uninsured motorist coverage.

2. Safeco issued an Illinois Personal Automobile Policy (No. Z3620833) to Wagenmaker that was in effect on July 3, 2006. The policy provides $500,000 in uninsured motorist coverage.

3. On July 3, 2006, Wagenmaker was a passenger in a 1998 Chevrolet Corvette identified as a "covered auto" under Amica's policy.

4. Amica charged a flat rate for uninsured motorist coverage irrespective of the number of vehicles on the policy.

5. Despite the purported change in uninsured motorist coverage in October 2005, the vehicle in which Wagenmaker was a passenger, the 1998 Chevrolet Corvette, was a "covered auto" under Amica's policy as of the time of the motor vehicle accident of July 3, 2006.

6. Despite the purported change in uninsured motorist coverage in October 2005, Amica's flat rate premium for uninsured motorist coverage charged to Vitone was not reduced.

## III. SUMMARY JUDGMENT STANDARD

In deciding a motion for summary judgment, the critical question for the court is whether a genuine issue of material fact exists. See Lynch v. Bank of America, 2007 U.S. Dist. LEXIS 43214 at *2 citing Crawford v. Cooper/T. Smith Stevedoring Co., Inc., 14 F.Supp.2d 202, 208 (D.R.I. 1998). The court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in its favor. See Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006). After the moving party has demonstrated the absence of a genuine issue of material fact in the record, the burden shifts to the nonmovant to show there is sufficient legally competent evidence for a jury to find for it on each essential element of its claims. See DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). Once the moving party meets its burden, if the nonmovant opposes the motion with only "conclusory allegations, improbable inferences and unsupported speculation" the motion should be granted. See Smith v. Stratus Computer, Inc., 40 F.3d 11, 13 (1st Cir. 1994).

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be sufficient." Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986). "[T]here must be evidence on which the jury could reasonably find for the plaintiff"; otherwise, the motion should be granted. Id. at 252. The Court's inquiry, therefore, "asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." Id.

Rule 56(c) of the Federal Rules of Civil Procedure requires the entry of summary judgment against a party who fails to establish the existence of an essential element to her case, and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In Celotex, the Supreme Court explained:

> In such a situation, there can be 'no genuine issue as to an material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts inmaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a

sufficient showing on an essential element of her case with respect to which she has a burden of proof. Id. at 322-323.

## IV. ARGUMENT

### A. Contrary To Amica's Assertion, Amica's Policy Provides Uninsured Motorist Coverage To Wagenmaker.

Amica contends that it is entitled to summary judgment because uninsured motorist coverage for Vitone's 1998 Chevrolet Corvette was deleted from Amica's policy prior to the July 3, 2006 accident. Amica's position is misplaced as the plain and unambiguous language of the endorsement requires coverage. Amica's Rhode Island Uninsured Motorist endorsement provides in part:

> **Part C – Uninsured Motorists Coverage**
>
> **Part C is replaced by the following:**
>
> **Insuring Agreement**
>
> **A.** We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury**:
>
> 1. sustained by an insured; and
>
> **B.** **"Insured"** as used in this Part means:
>
> 2. Any other person **occupying your covered auto**.

Thus, if Wagenmaker is an insured, she is entitled to uninsured motorist coverage for bodily injury. Under the Endorsement, an insured is defined, in part, as any person occupying a "covered auto". A "covered auto" is defined in the definitional section of the policy as follows:

> **J.** **"Your covered auto"** means:
>
> 1. Any vehicle shown in the Declarations.

Given that the 1998 Corvette was as of the time of the accident a vehicle shown in the Declarations, it is considered a covered auto and Wagenmaker is considered an insured under the Rhode Island Uninsured Motorists Endorsement given she was occupying a covered auto.

In its unambiguous application, the Uninsured Motorist Endorsement requires that Wagenmaker be considered an insured and thus entitled to coverage. The Rhode Island Supreme Court has indicated that the same rules for construing contracts are used when construing insurance policies. See Martinelli v. Travelers Insurance, 687 A.2d 443 (R.I. 1996). Historically, the Rhode Island Supreme Court has not departed from the literal language of the policy absent a finding that the policy is ambiguous. To determine whether a policy is ambiguous, the Court reads the policy in its entirety, giving each word its plain, ordinary and usual meaning. Id. The Court will not engage in mental gymnastics, nor will it stretch the language in a policy to read ambiguity into it where none is present. Employers Mutual Casualty Co. v. Pires, 723 A.2d 295 (R.I. 1999) (quoting Mallane v. Holyoke Mutual Insurance Co., 658 A.2d 18 (R.I. 1995)). When the terms of an insurance policy are found to be clear and ambiguous, judicial construction is at an end and the contract terms must be applied as written and the parties are bound by them. Amica Mutual v. Streicker, 583 A.2d 550 (R.I. 1990) (quoting Malo v. Aetna Cas. & Sur. Co., 459 A.2d 954 (R.I.1983)). When determining coverage, the Rhode Island Supreme Court has noted one should not look at what the insurer may have intended the policy to exclude, but rather what an ordinary reader of the policy would have understood the policy terms to mean if he/she had read them. Sanzi v. Shetty, 864 A.2d 614 (R.I. 2005).

Amica claims that because uninsured motorist coverage was purportedly deleted for the Corvette there is no coverage to Wagenmaker. However, as can be gleaned from the Rhode Island Uninsured Motorists Endorsement, coverage under Amica's policy for Wagenmaker turns solely on whether or not Wagenmaker meets the definition of an insured. Whether the deletion of uninsured motorist coverage operates to preclude the named insured Vitone from pursuing an uninsured motorist claim is irrelevant to the analysis applicable to Wagenmaker. If Amica did not intend to provide uninsured motorists coverage to passengers of "covered autos", Amica could have easily

modified its definition of a "covered auto" to limit coverage in that regard. Amica's Uninsured Motorists Endorsement and definition of a "covered auto" fails to do so. With this legal backdrop, the application of Amica's Rhode Island Uninsured Motorists Endorsement leads to the inescapableable conclusion that coverage must be afforded to Wagenmaker.

At best, the arguable inconsistency between the Uninsured Motorists Endorsement and Amica's intent to delete Uninsured Motorist Coverage creates an ambiguity. It is well settled under Rhode Island law that policies have to be interpreted in a light most favorable to the prospective insured. Town of Cumberland v. Rhode Island Interlocal Risk Management Trust, 868 A.2d 1210 (R.I. 2004); American Commerce Insurance Company v. Porto, 811 A.2d 1185 (R.I. 2002); Textron, Inc. v. Aetna Cas. & Sur. Co., 754 A.2d 742 (R.I. 2000). Under Rhode Island law, ambiguous insurance policies are interpreted against the drafter and in favor of the insured, in order to achieve the public policy goal of providing insurance coverage for consumers. Lifespan/Physicians Professional Services Organization, Inc. v. Combined Insurance Company of America, 354 F.Supp. 2d, 214 (D.R.I. 2004); Textron, Inc. v. Aetna Cas. & Sur. Co., 754 A.2d 742 (R.I. 2000).

In this case, if any credence is given to Amica's position that coverage was deleted, the interpretation of the Rhode Island Uninsured Motorist Endorsement is clearly at odds with that proposition and creates an ambiguity in the contract which must be construed in favor of coverage for Wagenmaker.

**B. The Fact That Amica's Flat Rate Charge Was Not Reduced Despite The Purported Deletion Of Uninsured Motorist Coverage Is Further Evidence That Coverage Must Be Afforded To Wagenmaker As A Passenger Of A Covered Auto.**

Amica claims that the mere existence of a flat rate premium for uninsured motorist coverage does not entitle Wagenmaker to uninsured motorists benefits. Amica contends that the flat rate premium for uninsured motorists coverage is without consequence because Vitone requested the

elimination of such coverage for the vehicle. Amica fails to indicate why the flat rate was not also adjusted if coverage was purportedly deleted for the vehicle. The reason why the flat rate was not adjusted is clearly because uninsured motorist coverage on Amica's policy is not vehicle orientated, but rather insured orientated. The premium for uninsured motorists coverage is not based upon the number of covered autos that have uninsured motorists coverage, but the risk of providing such coverage to the insureds. In fact, that rationale is entirely consistent with the application of Amica's Rhode Island Uninsured Motorists Endorsement. Amica's Uninsured Motorists Endorsement focuses on whether or not a claimant is considered an insured and not whether the "covered auto" under the policy has corresponding uninsured motorist coverage.

Amica bases its justification for a flat rate on its alleged conern with inter/intra policy stacking. However, if that were Amica's intent, there would be a corresponding reduction in the overall flat rate premium based on a reduced number of covered autos that had such coverage. Without any corresponding reduction in premium, there can be no reduction of coverage.

C. **Given That Amica Must Provide Uninsured Motorists Coverage To Wagenmaker, There Is No Coverage Afforded To Wagenmaker Under Safeco's Policy.**

Safeco's Uninsured Motorists Endorsement "Other Insurance" provision only allows Wagenmaker to recover from the higher of the applicable uninsured motorist coverages available.

Safeco's "other insurance" provision provides as follows:

> **Other insurance**
>
> **A.** For Uninsured Motorists Coverage only:
>
> If there is other applicable similar insurance available under more than one policy or provision of coverage:
>
> 1. Any recovery for damages for **bodily injury** sustained by an insured may equal but not exceed the higher of the applicable limit for any one vehicle under this insurance or any other insurance.

Given that Safeco's policy was delivered in the State of Illinois, Illinois law governs the interpretation of the contract. Under Rhode Island law, an insurance policy is interpreted by the state in which the policy was issued for delivery. See Hartford Casualty Insurance Company v. A&M Associates Ltd., 200 F.Supp.2d 84 (R.I. 2002); Toledo v. Van Waters & Rogers, Inc., 92 F.Supp.2d 44 (D.R.I. 2000).

Under Illinois law, the above "Other Insurance" provision is considered an anti-stacking provision and is valid. Wilson v. Economy Fire & Casualty Co., 690 N.E.2d 1073 (Ill. App.Ct. 4th Dist. 1998).

Illinois' interpretation of insurance contracts is similar to that of Rhode Island. Under Illinois law, an insurance policy is a contract which must be interpreted in accordance with the rules of contract construction. Id.; Gonzalez v. State Farm Mutual Automobile Insurance Co., 611 N.E.2d 38 (Ill. 1993). The function of an Illinois Court in construing insurance policies is to give the effect to the intention of the parties that are expressed in the policy. De los Reyes v. Travelers Insurance Cos., 553 N.E.2d 301 (Ill. 1990).

Under Illinois law, an insurer may restrict uninsured motorist coverage from either inter-policy or intra-policy stacking. Wilson, 690 N.E.2d 1073. In Wilson, the court was called upon to interpret an identical "Other Insurance" provision as that involved here. There, the court noted that the Illinois statute specifically allowed insurers to provide for "anti-stacking" clauses in its insurance policies. Specifically, Illinois Insurance Code (215 ILCS 5/143a-2(5)(West 1996)) provides as follows:

> "Nothing herein shall prohibit an insurer from setting forth policy terms and conditions which provide that if the insured has coverage available under this Section under more than one policy or provision of coverage, any recovery or benefits may be equal to, [*797] but may not exceed, the higher of [**1075] the applicable limits of the respective coverage, and the limits of liability under this Section shall not be increased because of multiple motor vehicles covered under the same policy of insurance." Id.

The court in Wilson noted the identical "Other Insurance" provision can prevent both intra-policy situations, as well as inter-policy, as in this case.

In this case, Safeco's "Other Insurance" provision is valid and unambiguous. Thus, Wagenmaker's recovery is limited to the greater of Amica's and/or Safeco's policy. Given that it is undisputed that Amica's policy limit is greater than Safeco's policy limit, Wagenmaker is limited to uninsured motorists coverage under Amica's policy only.

## V. CONCLUSION

For the above reasons, Amica's motion for summary judgment should be denied. The clear application of Amica's Rhode Island Uninsured Motorist Endorsement leads to the conclusion that Wagenmaker is an insured and entitled to coverage. To the extent there is an ambiguity raised by Amica's purported deletion of coverage to the 1998 Corvette, that ambiguity must be construed against Amica and in favor of coverage for Wagenmaker. Since Amica provides coverage to Wagenmaker, there is no coverage afforded to Wagenmaker under Safeco's policy given that Safeco's "other insurance" provision requires that Wagenmaker only recover from the greater of the applicable coverage available to her.

/s/ Mark P. Dolan

Mark P. Dolan, Esq. (#3280)
RICE DOLAN & KERSHAW
*Attorneys for Plaintiff*
*Safeco Insurance Company of Illinois*
72 Pine Street, Suite 300
Providence, RI 02903
(401) 272-8800 telephone
(401) 421-7218 fax

**CERTIFICATION**

The undersigned hereby certifies that a true copy of the within document has been sent to counsel of record, as follows, this 15th day of September, 2008:

David Oliveira, Esq.
155 South Main Street, Suite 305
Providence, RI 02903

Todd White, Esq.
Adler, Pollack & Sheehan, PC
One Citizens Plaza, 8th Floor
Providence, RI 02903

John A. Donovan, III, Esq.
Sloane and Walsh, LLP
3 Center Plaza, 8th Floor
Boston, MA 02108

/s/ Mark P. Dolan